# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **PERRY STRICKLER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CHASE MANHATTAN MORTGAGE** | § | **CIVIL ACTION NO. 1:14-cv-00858-SS** |
| **COMPANY, J.P. MORGAN CHASE** | § | |
| **BANK, N.A., HOMETRUST** | § | **JURY** |
| **MORTGAGE COMPANY F/K/A HOME** | § | |
| **TRUST COMPANY, WENDY** | § | |
| **ALEXANDER and BARRETT DAFFIN** | § | |
| **FRAPPIER TURNER & ENGEL, LLP,** | § | |
| | § | |
| **Defendants.** | § | |

## APPENDIX TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
## FOR FAILURE TO STATE A CLAIM

| _Exhibit_ | _Description_ | _Appendix Page Nos._ |
|:---:|:---|:---|
| A | Deed of Trust | App. 1 – 8 |
| B | Assignment of Deed of Trust or Mortgage | App. 9 – 10 |
| C | Substitute Trustee's Deed | App. 11 – 12 |
| D | Certificate of Merger (Chase Manhattan Mortgage Corporation into Chase Home Finance LLC) | App. 13 – 14 |
| E | Certificate of Merger (Chase Home Finance LLC into JPMorgan Chase Bank, National Association) | App. 15 - 17 |
| F | Order Granting Motion to Dismiss without Prejudice | App. 18 - 26 |

TRV 2001060863
8 pga

13-1874-829 dt

After Recording, Return to:
Home Trust Company
5353 W. Alabama, Suite 500
Houston, TX 77056
Loan ID: 0711338

[Space Above This Line For Recording Data]

State of Texas

# DEED OF TRUST

| FHA Case No |
| --- |
| 495-5795357- 703 |

THIS DEED OF TRUST ("Security Instrument") is made on    April 09, 2001
The Grantor is  PERRY STRICKLER

("Borrower") The trustee is    Patricia A. Fields

("Trustee") The beneficiary is    Home Trust Company

which is organized and existing under the laws of    The State of Texas              , and
whose address is  5353 W. Alabama, Suite 500, Houston, TX 77056
("Lender") Borrower owes Lender the principal sum of
**One Hundred Nineteen Thousand Fifty Nine and  no/100.--------**
Dollars (U.S. $    119,059.00        )
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on       May 01,
2031        This Security Instrument secures to Lender  (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note, (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Texas Deed of Trust - 4/96

Page 1 of 8          Initials _____

EXHIBIT
**A**

App. 1

of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in TRAVIS County, Texas

LOT 23, BLOCK "I", WALNUT CROSSING, SECTION FIVE (A), AN
ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT
THEREOF RCORDED IN BOOK 79, PAGE 26-27, OF THE PLAT RECORDS OF
TRAVIS COUNTY, TEXAS.

which has the address of          3605 COCKSTOWN DRIVE, AUSTIN                    [Street, City],
Texas               78759        [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property "

BORROWER COVENANTS that Borrower is law fully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

Borrower and Lender covenant and agree as follows

UNIFORM COVENANTS

1  Payment of Principal, Interest and Late Charge  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note

2  Monthly Payment of Taxes, Insurance and Other Charges  Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4  In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either  (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary  Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds "

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U S C  Section 2601 et seq  and implementing regulations, 24 CFR  Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items a (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for item a (a), (b), and (c)

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

_First_, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium,

_Second_, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required,

_Third_, to interest due under the Note,

_Fourth_, to amortization of the principal of the Note, and

_Fifth_, to late charges due under the Note

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender require insurance This insurance shall be maintained in the amounts and for the periods that Lender requires Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary All insurance shall be carried with companies approved by Lender The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender

In the event of loss, Borrower shall give Lender immediate notice by mail Lender may make proof of loss if not made promptly by Borrower Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application, Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control Borrower shall notify Lender of any extenuating circumstances Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default Lender may take reasonable action to protect and preserve such vacant or

Austin Data, Inc.          TH ADI12944 TR 2001060863.003

App. 3

abandoned Property Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6 Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7 Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items as mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8 Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if

@D-4R(TX) (9704).01 Page 4 of 8 Initials 

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument

11. Borrower Not Released, Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

12. Successors and Assigns Bound, Joint and Several Liability, Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent

Austin Data, Inc.                    TH ADI12944 TR 2001060863.005

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Austin Data, Inc.    TH ADI12944 TR 2001060863.006

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

22. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

23. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider   ☐ Growing Equity Rider   ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

24. Purchase Money/Vendor's Lien; Renewal and Extension. [Complete as appropriate]

**THE NOTE SECURED HEREBY IS PRIMARILY SECURED BY THEVENDOR'S LIEN RETAINED IN THE DEED OF EVEN DATEHEREWITH CONVEYING THE PROPERTY TO BORROWER, WHICH VENDOR'S LIEN HAS BEEN ASSIGNED TO LENDER, THIS DEED OF TRUST BEING ADDITIONAL SECURITY THEREFOR.**

Page 7 of 8

Initial _____

Loan #: 0711338

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                      PERRY STRICKLER               -Borrower

_____     _____ (Seal)
                                                                    -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                                       -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                                       -Borrower

_____ (Seal)      _____ (Seal)
                    -Borrower                                       -Borrower

STATE OF TEXAS
County of   Travis

    Before me   the undersigned                    on this day personally appeared
PERRY STRICKLER

known to me (or proved to me on the oath of _____
or through   drivers license                    ) to be the person whose name is subscribed to
the foregoing instrument and acknowledged to me that  HE  executed the same for the purposes and consideration
therein expressed.
    Given under my hand and seal of office this  12th  day of   April  , 2001

(Seal)

                                                Notary Public

MD-6 (TX) (9702).01                             Loan #: 0711338

SUSAN L ROBERTSON
Notary Public
STATE OF TEXAS
My Comm Exp 11-14-2002

# FILED AND RECORDED
### OFFICIAL PUBLIC RECORDS

04-20-2001  03:11 PM 2001060863
CANBRAYR  $23.00
DANA DEBEAUVOIR ,COUNTY CLERK
TRAVIS COUNTY, TEXAS

Austin Data, Inc.                    TH ADI12944 TR 2001060863.008

Prepared by and Return to
Albert E Butler, P C
5353 W Alabama, Suite 515
Houston, TX 77056


TRV 2001103975
2 pgs

Loan Number    0711338

## ASSIGNMENT OF DEED OF TRUST OR MORTGAGE

THE STATE OF    **Texas**                    }
                                             }        KNOW ALL MEN BY THESE PRESENTS
THE COUNTY OF   **TRAVIS**                   }

    That   **Home Trust Company**
the present legal and equitable owner and holder of that one certain promissory note in the original principal sum of
**One Hundred Nineteen Thousand Fifty Nine and no/100.**
Dollars ($   **119,059 00**   ), dated   **April 09, 2001**    executed by   **PERRY STRICKLER**

payable to the order of   **Home Trust Company**
more fully described in a Deed of Trust or Mortgage, recorded in the Official Real Property Records of
    **TRAVIS**                County, **Texas**           , under  200 10 060863
                                        said Note being secured by said Deed of Trust or
Mortgage lien against the following described property, to wit

    **LOT 23, BLOCK "I", WALNUT CROSSING, SECTION FIVE (A), AN
    ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT
    THEREOF RCORDED IN BOOK 79, PAGE 26-27, OF THE PLAT RECORDS OF
    TRAVIS COUNTY, TEXAS**

for a good and valuable consideration paid to the undersigned, the receipt and sufficiency of which is hereby acknowledged,
has TRANSFERRED and ASSIGNED, GRANTED, and CONVEYED and by these presents TRANSFERS, ASSIGNS,
GRANTS and CONVEYS unto
    **Chase Manhattan MortgageCorporation
    1500 N. 19th Street
    Monroe, LA  71201**

the above described Note, together with all liens, and any superior title, held by the undersigned securing the payment thereof

EXECUTED this   26TH   day of   April 2001

                                Home Trust Company

                                BY
                                Patricia A  Fields
                                Sr. Vice President

THE STATE OF TEXAS

THE COUNTY OF HARRIS           April 26, 2001

    Acknowledged before me on
Vice President of Home Trust Company                by Patricia A Fields, Sr.
on behalf of said corporation

                Notary Public        BOBBIE F. POWELL
                                      NOTARY PUBLIC
                                      STATE OF TEXAS
                                      MY COMMISSION EXPIRES
                                      SEPTEMBER 12, 2001

ASSNDT (1/3/2000)

Austin Data, Inc.                    TH ADI12944 TR 2001103975.001

**EXHIBIT**

**B**

App. 9

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

06-27-2001 09:55 AM 2001103975
NARVAEZJ $11.00
DANA DEBEAUVOIR ,COUNTY CLERK
TRAVIS COUNTY, TEXAS

Recorders Memorandum-At the time of recordation
this instrument was found to be inadequate for the best
reproduction because of illegibility carbon or
photocopy, discolored paper etc. All blackouts
additions and changes were present at the time the
instrument was filed and recorded

Austin Data, Inc.

TH ADI12944 TR 2001103975.002

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

3605 COOKSTOWN DRIVE
AUSTIN, TX 78759
495-5795357
20130187400829

### SUBSTITUTE TRUSTEE'S DEED

GRANTOR(S):
    PERRY STRICKLER

DEED OF TRUST DATE: April 9, 2001
DATE OF SALE OF PROPERTY: June 4, 2013

ORIGINAL MORTGAGEE:
    HOME TRUST COMPANY

TIME OF SALE: 10:39   AM/PM
PLACE OF SALE OF PROPERTY:
    THE REAR "SALLYPORT" OF THE TRAVIS COUNTY
    COURTHOUSE 1000 GUADALUPE STREET, AUSTIN,
    TEXAS 78701, OR THE PLACE DESIGNATED BY THE
    COUNTY COMMISSIONERS COURT

CURRENT MORTGAGEE:
    JPMORGAN CHASE BANK, N.A.
MORTGAGE SERVICER:
    JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

GRANTEE/BUYER:
    JPMORGAN CHASE BANK, N.A.
GRANTEE/BUYER'S MAILING ADDRESS:
    3415 VISION DRIVE
    COLUMBUS, OH 43219

RECORDED IN:
    CLERK'S FILE NO. 2001060863

AMOUNT OF SALE: $ 170,625.52

PROPERTY COUNTY/LEGAL DESCRIPTION: TRAVIS
    LOT 23, BLOCK "I", WALNUT CROSSING, SECTION FIVE (A), AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN BOOK 79, PAGE 26-27, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee of the Note, through the Mortgage Servicer, accordingly has appointed Substitute Trustee and requested Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for amount of sale in the manner prescribed by law. The subject sale was conducted no earlier than 10:00AM as set forth in the Notice of Substitute Trustee's Sale and was concluded within three (3) hours of such time. All matters, duties and obligations of Mortgagee were lawfully performed.

Substitute Trustee, subject to any matters of record, and for amount of sale paid by buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. Substitute Trustee hereby sells the above referenced property AS IS without any expressed or implied warranties, except as to warranties of title, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §§ 51.002 and 51.009.

WITNESS MY HAND, this June 04, 2013.

    Substitute Trustee     Wendy Alexander

STATE OF TEXAS
COUNTY OF WILLIAMSON

Before me, the undersigned Notary Public, on this day personally appeared    Wendy Alexander
as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification described as
_____ to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this   June 04, 2013.

My Commission Expires:

_____

    Notary Public for the State of  TEXAS

_____

    Printed Name of Notary Public

SEAL

MICHAEL R. MOODY
Notary Public, State of Texas
My Commission Expires
April 05, 2016

RETURN TO:
    BARRETT DAFFIN FRAPPIER
    TURNER & ENGEL, L.L.P.
    15000 Surveyor Boulevard, Suite 100
    Addison, Texas 75001

Substitute Trustee's Deed (FHA)
SubTrusteeDeedCounty.rpt - (12/12/2012) / Ver-22



STD20130187400829

**EXHIBIT
C**

# STATEMENT OF FACTS

3605 COOKSTOWN DRIVE
AUSTIN, TX 78759

BDFTE No: 20130187400829

BEFORE ME, the undersigned authority on this day personally appeared _____**Keegan Tyler**_____
known to me, who upon oath administered by me deposed and stated:

1. I am a representative of the law firm BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP in connection with the administration of foreclosure of that certain Deed of Trust or Security Instrument ("Deed of Trust") dated April 09, 2001, recorded in CLERK'S FILE NO. 2001060863, Real Property Records, TRAVIS County, TEXAS, executed by PERRY STRICKLER ("Grantor").

2. I am making this affidavit based upon certain records maintained within the firm's files in the regular course of its business, which may include images of notices, certified mail forms, the signed Substitute Trustee's Deed, title searches, and other documents and records obtained and maintained in the usual course of business. Together with my general knowledge of mortgage servicer practices for referring foreclosure matters to the firm, the statements and information shown in these records form the basis for the following statements made in this affidavit, which to the best of my knowledge and belief are true.

3. JPMORGAN CHASE BANK, NATIONAL ASSOCIATION is the Mortgage Servicer for the Lender or its Nominee concerning the debt evidenced by the Deed of Trust.

4. The Mortgagee, through the Mortgage Servicer declared that the Grantor defaulted in performing the obligations of the Deed of Trust and lawfully performed service of a proper notice of default and other obligations and duties of the Mortgage Servicer.

5. All notices of acceleration were served on each debtor obligated on the debt according to records obtained from the Mortgage Servicer by certified mail at the last known address of each such debtor in accordance with law. Based upon these records, each mortgagor was alive at the time of the foreclosure sale or if deceased, title was restored to the debt owner through a court judgment, or an underwriter's approval letter obtained, or the statute of limitations to file a probate action has passed and no probate action was filed.

6. At the instructions and on behalf of the Mortgage Servicer, Notices stating the time, place and terms of sale of the property were mailed, posted and filed in accordance with law. Notices were served on each debtor obligated on the debt according to records obtained from the Mortgage Servicer by certified mail at the last known address of each such debtor at least twenty one (21) days before the date of the sale.

7. Through my work at the firm, I know that the firm follows a regular process in foreclosure matters to ascertain a Grantor's military service status for purposes of the Federal Service Member's Civil Relief Act and state law. I am familiar with this regular process, which involves submitting Grantors' names and identifying information obtained from the Mortgage Servicer or commercially available records searches to the Federal Defense Manpower Data Center ("DMDC") through that agency's official internet search site (the "DMDC" Site). Based upon my review of search returns obtained and maintained in the firm's files and loan records provided by the Mortage Servicer, no Grantor is reported as on active duty military service or is reported as having concluded active duty military service within the preceding year or qualifies for foreclosure protection under the Federal Service Member's Civil Relief Act and state law.

Keegan Tyler

STATE OF     TEXAS     }
COUNTY OF   DALLAS    }

JUN 12 2013

Given under my hand and seal of office this _____ day of _____.

Notary Seal:

Notary Public for the State of Texas

JODY SUTLIFFE
Notary Public, State of Texas
My Commission Expires
02/10/2017

## FILED AND RECORDED
### OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

Jun 14, 2013  12:19 PM  **2013109950**
MITCHELLM: $20.00
Dana DeBeauvoir, County Clerk
Travis County  TEXAS

AFFIDAVIT - 501
RETURN TO:
BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
Affidavit-BatchPrint.rpt - (3/29/2013) / Ver-26

STA20130187400829

Page 1503 of 2430

App. 12

# Delaware

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"CHASE MANHATTAN MORTGAGE CORPORATION", A NEW JERSEY
CORPORATION,

WITH AND INTO "CHASE HOME FINANCE LLC" UNDER THE NAME OF
"CHASE HOME FINANCE LLC", A LIMITED LIABILITY COMPANY ORGANIZED
AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS
RECEIVED AND FILED IN THIS OFFICE THE FOURTEENTH DAY OF
DECEMBER, A.D. 2004, AT 10:24 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF
THE AFORESAID CERTIFICATE OF MERGER IS THE FIRST DAY OF JANUARY,
A.D. 2005.

Jeffrey W. Bullock, Secretary of State

3881786   8100M

121263808

You may verify this certificate online
at corp.delaware.gov/authver.shtml

AUTHENTICATION: 0012068

DATE: 11-27-12

**EXHIBIT**

_D_

App. 13

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 10:24 PM 12/14/2004*
*FILED 10:24 PM 12/14/2004*
*SRV 040905685 - 3881786 FILE*

# CERTIFICATE OF MERGER
## OF
## CHASE MANHATTAN MORTGAGE CORPORATION
### WITH AND INTO
### CHASE HOME FINANCE LLC

Pursuant to Sec. 18-209 of the Delaware Limited Liability Company Act, the undersigned surviving  limited liability company submits the following Certificate of Merger for filing and certifies that:

1. The name and jurisdiction of formation or organization of each of the limited liability companies or other business entities which are merging are:

| Name | Jurisdiction |
|---|---|
| Chase Home Finance LLC | Delaware |
| Chase Manhattan Mortgage Corporation | New Jersey |

2. An agreement of merger has been approved and executed by each of the domestic limited liability companies or other business entities which is to merge.

3. The name of the surviving limited liability company is: Chase Home Finance LLC

4. The merger shall become effective on January 1, 2005.

5. The agreement of merger is on file at a place of business of the surviving limited liability company which is located at :

194 Wood Avenue South
Iselin, New Jersey 08830

6. A copy of the agreement of merger will be furnished by the surviving limited liability company, on request and without cost, to any member of any domestic limited liability company or any person holding an interest in any other business entity which is to merge.

IN WITNESS WHEREOF, this Certificate of Merger has been duly executed as of the ___ day of December, 2004 and is being filed in accordance with Sec. 18-209 of the Act by an authorized person of the surviving limited liability company in the merger.

By: *Marguerite E Sheehan*

Marguerite E. Sheehan, Corporate Secretary

# Delaware

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"CHASE HOME FINANCE LLC", A DELAWARE LIMITED LIABILITY
COMPANY,

WITH AND INTO "JPMORGAN CHASE BANK, NATIONAL ASSOCIATION"
UNDER THE NAME OF "JPMORGAN CHASE BANK, NATIONAL ASSOCIATION", A
CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE COUNTRY
OF UNITED STATES, AS RECEIVED AND FILED IN THIS OFFICE THE
TWENTY-SEVENTH DAY OF APRIL, A.D. 2011, AT 6:04 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF
THE AFORESAID CERTIFICATE OF MERGER IS THE FIRST DAY OF MAY,
A.D. 2011, AT 12:02 O'CLOCK A.M.

3881786  8100M

121263834

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

*AUTHENTICATION: 0012081*

*DATE: 11-27-12*

**EXHIBIT**

*E*

App. 15

State of Delaware
Secretary of State
Division of Corporations
Delivered 06:03 PM 04/27/2011
FILED 06:04 PM 04/27/2011
SRV 110463889 - 3881786 FILE

# STATE OF DELAWARE CERTIFICATE OF MERGER OF
## CHASE HOME FINANCE LLC
### (a Delaware Limited Liability Company)
### WITH AND INTO
## JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
### (a national banking association organized under the laws of the United States of America)

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Act and pursuant to the laws of the United States of America, the undersigned national association executes the following Certificate of Merger:

**FIRST**: The name of the surviving entity is JPMorgan Chase Bank, National Association, a national banking association organized and existing under the laws of the United States of America, and the name of the limited liability company being merged into the surviving entity is Chase Home Finance LLC, a Delaware limited liability company.

**SECOND**: The Plan and Agreement of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent entities.

**THIRD**: The name of the surviving entity is JPMorgan Chase Bank, National Association, a national banking association organized and existing under the laws of the United States of America.

**FOURTH**: The Charter of JPMorgan Chase Bank, National Association shall continue to be the Charter of the surviving entity.

**FIFTH**: The merger is to become effective at 12:02 A.M. on May 1, 2011.

**SIXTH**: The Plan and Agreement of Merger is on file at 194 Wood Avenue South, Iselin, New Jersey 08830, a place of business of the surviving entity.

**SEVENTH**: A copy of the Plan and Agreement of Merger will be furnished by the surviving entity, upon request and without cost, to any member of any domestic limited liability company or any person holding an interest in any other business entity which is to merge or consolidate.

**EIGHTH**: JPMorgan Chase Bank, National Association, the surviving entity, agrees that it may be served with process in the State of Delaware in any action, suit or proceeding for the enforcement of any obligation of any domestic limited liability company which is to merge or consolidate, irrevocably appointing the Delaware Secretary of State as its agent to accept service of process in any such action, suit or proceeding, and specifies that a copy of such process shall be mailed by the Secretary of State to the surviving entity at 194 Wood Avenue South, 2nd Floor, Iselin, New Jersey 08830.

App. 16

**IN WITNESS WHEREOF**, said surviving entity has caused this certificate to be signed by an authorized officer this 27th day of April, 2011.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
Surviving Entity

Lauren V. Harris, Vice President

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2013 DEC 30  PM 3: 35

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
         DEPUTY

PERRY STRICKLER,
                              Plaintiff,

-vs-                                                    Case No. A-13-CA-781-SS

HOME TRUST MORTGAGE COMPANY;
JPMORGAN CHASE BANK, N.A.; BARRETT
DAFFIN FRAPPIER TURNER & ENGEL, LLP;
FATIMA STIGGER; PETRAQ STEFANLLARI;
WENDY ALEXANDER; NIJAZ PAJIC;
KEEGAN TYLER; and JOHN DOES 1-4,
                              Defendants.

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion to Dismiss for Failure to State a Claim [#5][1], Defendants' Motion to Dismiss First Amended Complaint for Failure to State a Claim [#7], Plaintiff Perry Strickler's Unopposed Motion for Extension of Time to File Response [#8][2], Plaintiff Perry Strickler's Response [#10], and Defendants' Reply [#11]. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This is a foreclosure case originating on or around April 9, 2001, when Plaintiff Perry Strickler executed a Deed of Trust encumbering the property located at 3605 Cookstown Dr., Austin,

---

[1]This motion is DISMISSED AS MOOT.

[2]This motion is GRANTED.



App. 18 ✓

Texas 78759 (the Property).  The Deed of Trust identifies Home Trust Company as the beneficiary. Home Trust Company assigned the Deed of Trust to Chase Manhattan Mortgage Corporation, and Chase Manhattan Mortgage Corporation merged into Chase Home Finance LLC.  Chase Home Finance LLC then merged into JPMorgan Chase Bank, National Association (JPMC).  JPMC, as the mortgagee and mortgage servicer of the Deed of Trust, non-judicially foreclosed the lien in accordance with the terms of the Deed of Trust.

Strickler filed a lawsuit in state court challenging the foreclosure, and JPMC removed the case to this Court on September 6, 2013.  JPMC moved to dismiss the case, and Strickler filed a First Amended Complaint [#6].  In this complaint, Strickler sued: (1) JPMC; (2) Home Trust Mortgage Company; (3) Barrett, Daffin, Frapier, Turner & Engel, LLP; (4) Fatima Stigger; (5) Petraq Steffanlari; (6) Wendy Alexander; (7) Nijaz Pajic; (8) Keegan Tyler; and (9) John Does 1–4, who are persons who signed various documents within the foreclosure process who Strickler could not identify based on their signatures.  Strickler asserted the following claims: (1) breach of contract; (2) tortious interference with existing contract; (3) void foreclosure for lack of authority to transfer the Note; (4) promissory estoppel; (5) violations of the Texas Finance Code; (6) violations of the Texas Debt Collection Act (TDCA); (7) suit to quiet title; (8) a declaratory judgment; (9) violation of Texas Civil Practice & Remedies Code § 12.002; and (10) accounting.

JPMC then filed a Motion to Dismiss the First Amended Complaint [#7].  In his Response [#10], Strickler indicated to the Court the parties conducted a conference in which they agreed JPMC provided documents demonstrating a chain of title.  Based on this understanding, Strickler told the Court he would, within three days of filing his Response, file a motion to nonsuit Home Trust Mortgage Company, the law firm Barrett, Daffin, Frapier, Turner & Engel, and the individual

-2-

Defendants except for John Does 1–4. *See* Pl.'s Resp. [#10], at 1. Strickler then told the Court his Response only addressed the claims for fraud and promissory estoppel "as the documents provided by Defendants in their motion provide an evidentiary basis that precludes the other claims." *Id.* Strickler did not include in his First Amended Complaint an allegation of fraud, and his Response only addressed the promissory estoppel claim. Also, Strickler never actually filed the motion to nonsuit all of the Defendants with the exceptions of JPMC and John Does 1–4.

Nevertheless, the Court DISMISSES WITHOUT PREJUDICE all claims against: (1) Home Trust Mortgage Company; (2) the law firm Barrett, Daffin, Frapier, Turner & Engel; (3) Fatima Stigger; (4) Petraq Steffanlari; (5) Wendy Alexander; (6) Nijac Pajic; and (7) and Keegan Tyler. While Strickler indicated he wanted to maintain his claims against only JPMC and John Does 1–4, none of Strickler's arguments in his Response, which all pertain to promissory estoppel, relate to John Does 1–4. The promissory estoppel allegations entirely relate to representations made by JPMC employees over the phone. The John Doe defendants apparently just signed some of the documents during the foreclosure process, and Strickler was unable to identify them by their signature. Since none of these John Does relate to Strickler's sole surviving claim, promissory estoppel, the Court DISMISSES WITHOUT PREJUDICE all claims against John Does 1–4.

Therefore, the only remaining claim is promissory estoppel, and the only remaining Defendant is JPMC. The Court now addresses the motion to dismiss with respect to this claim and this Defendant.

-3-

## Analysis

### I.       Rule 12(b)(6)—Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*  Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.  In deciding a motion to dismiss, courts may  consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss,

-4-

such as documents incorporated into the complaint by reference, and matters of which a court may

take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.   Application

The elements of promissory estoppel are: (1) the defendant made a promise to the plaintiff;

(2) the plaintiff reasonably and substantially relied on the promise to his detriment; (3) the plaintiff's

reliance was foreseeable by the defendant; and (4) injustice can be avoided only by enforcing the

defendant's promise. *Henry Schein, Inv. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002); *Bailey

v. City of Austin*, 972 S.W.2d 180, 193 (Tex. App.—Austin 1998, pet. denied).

In its motion to dismiss, JPMC argues promissory estoppel is barred by the statute of frauds

for: (1) loan agreements for more than $50,000; and (2) a promise relating to the sale of real estate.

JPMC relies on a recent Fifth Circuit opinion stating, "[p]romissory estoppel may overcome the

statute-of-frauds requirement in Texas, but there must have been a promise to sign a written contract

which had been prepared and which would satisfy the requirements of the statute of frauds." *Martins

v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256–57 (5th Cir. 2013).  Because Strickler does

not allege there was a promise to sign a written contract which had been prepared and would satisfy

the statute of frauds, JPMC contends, Strickler's promissory estoppel claims must be dismissed.

Strickler relies on an unpublished Fifth Circuit opinion, *Martin-Janson v. JP Morgan Chase

Bank, N.A.*, No. 12-50380, 2013 WL 3533682 (5th Cir. July 15, 2013) and argues:

> "When a promisor induces substantial action or forbearance by another, promissory
> estoppel prevents any denial of that promise if injustice can be avoided only by
> enforcement." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005)
> (citation omitted).  As recognized in *Martin-Janson*, this promise supersedes the
> statute of frauds requirement for a written agreement when "(1) the promisor should
> have expected the promise would lead the promisee to some definite and substantial
> injury; (2) such an injury occurred; and (3) the court must enforce the promise to

avoid injustice." 2013 U.S. App. LEXIS 14284 at *10-11 (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982). This completely forecloses Chase's statute of frauds defense.

Pl.'s Resp. [#10], at 3.

Strickler proceeds to contend he was told not to make timely payments in order to be put on a new payment schedule. He was then told not to make payments even though they were due under the trial payment plan on three different occasions, and if he did make the payments, he would be thrown out of the program.

In its Reply, JPMC again points the Court toward the Fifth Circuit's published opinion in *Martins v. BAC Home Loans Servicing, L.P.*, which restricts promissory estoppel as a mechanism for overcoming the statute of frauds to promises to sign a written contract which had been prepared and would satisfy the statute of frauds. JPMC explains away the Fifth Circuit's opinion in *Martin-Janson* as an "outlier" and "distinguishable." Defs.' Reply [#11], at 2.

The Court agrees with JPMC. First, the Court follows a published opinion before an unpublished one, and in *Martins v. BAC Home Loans Servicing, L.P.*, the court did require a promise to sign a written contract which had been prepared and would satisfy the statute of frauds in order to state a claim for promissory estoppel not barred by the statute of frauds. Because Strickler's allegations only relate to representations by JPMC employees not to make certain payments in order to qualify for the loan modification, Strickler's claims for promissory estoppel fail. As the court stated in *Martins v. BAC Home Loans Servicing, L.P.*, "[Plaintiff] alleges only an oral agreement, not a promise on the part of [Defendant] or its agents to sign an agreement validating the oral agreement that would satisfy the statute of frauds. Thus, promissory estoppel does not overcome the statute of frauds, and [Plaintiff's] argument fails." 722 F.3d at 257. Similarly, to the

extent Strickler's allegations establish any promises made by JPMC, they are merely oral agreements to put Strickler on a new payment schedule if he failed to make payments as instructed. Strickler does not allege a promise made by JPMC to sign an agreement validating this oral agreement and which would satisfy the statute of frauds.

In addition, the *Martin-Janson* decision is consistent with *Martins v. BAC Home Loans Servicing, L.P.* In fact, the court in *Martin-Janson* cited *Martins v. BAC Home Loans Servicing, L.P.* for the proposition promissory estoppel may overcome the statute of frauds, but only if there is a promise to sign a written contract which has been prepared and which would satisfy the requirements of the statute of frauds. *See Martin-Janson v. JP Morgan Chase Bank, N.A.*, No. 12-50380, 2013 WL 3533682, at *4 (5th Cir. July 15, 2013). Indeed, Strickler notably omits this aspect of the *Martin-Janson* decision, which cites multiple cases stating the promise must be a promise to sign an instrument complying with the statute of frauds. *See id.*

The court's decision in *Martin-Janson* to deny the motion to dismiss regarding the promissory estoppel claim is entirely consistent with these principles. The factual allegations there included numerous representations by the defendants stating a loan modification was "imminent," and "forthcoming." *See id.* at *5. Based on these representations, the plaintiff claimed to believe the defendants actually prepared a specific loan modification agreement but never forwarded her the document. *See id.* Based on these factual allegations, the plaintiff sought discovery to reveal either the draft loan modification agreement the defendant allegedly prepared, or the terms of her promised modification based on the lender's standard formulae. *See id.* In other words, the plaintiff alleged and was seeking to prove the defendant "'promise[d] to sign a written agreement which itself

-7-

complies with the statute of frauds." *Id.* (quoting *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 940 (Tex. 1973) and citing *Martins*, 722 F.3d at 256–57 (citations omitted)).

Here, Strickler makes no allegations any actual loan modification agreement, or even a draft, existed. There are no allegations of promises a loan modification was "imminent" or "forthcoming." Strickler's allegations relate simply to oral statements telling him to forego making payments in order to be eligible for the loan modification program. These allegations are barred by the statute of frauds and are therefore insufficient to state a claim for promissory estoppel. Therefore, Strickler's promissory estoppel claim against JPMC must be DISMISSED WITHOUT PREJUDICE.

### Conclusion

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim [#5] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that Plaintiff Perry Strickler's Unopposed Motion for Extension of Time to File Response [#8] is GRANTED;

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss First Amended Complaint for Failure to State a Claim [#7] is GRANTED;

IT IS FURTHER ORDERED that all of Plaintiff Perry Strickler's claims against all of the Defendants are DISMISSED WITHOUT PREJUDICE;

IT IS FINALLY ORDERED that Plaintiff Perry Strickler shall have TWENTY (20) days to file an amended complaint, if any, or this case will be closed.

SIGNED this the 30th day of December 2013.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE

App. 26